# STATE OF MICHIGAN

# COURT OF APPEALS

MAIN STREET BUSINESS CENTER AT
CELEBRATION VILLAGE, LLC,

UNPUBLISHED
February 9, 2016

Petitioner-Appellant,

v

No. 323927
Tax Tribunal

CITY OF GRAND RAPIDS,

LC No. 00-440757

Respondent-Appellee.

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Petitioner appeals by right the judgment of the Tax Tribunal determining that petitioner's property was not over-assessed and setting the true cash value (TCV) for petitioner's property in tax years 2012 and 2013 as the values reflected on the property record cards for those tax years, i.e., $6,099,400 and $6,192,400, respectively, and setting the state equalization value (SEV) and taxable value for petitioner's property in tax years 2012 and 2013 at $3,049,700 and $3,096,200, respectively. We vacate the Tribunal's judgment and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner's property is classified as commercial property. The property is a three-story building in which the first floor is comprised of retail space, the second story is mixed use of office space and retail space, and the third story is office space. Property taxes on the property are levied and collected by respondent. Petitioner brought a petition alleging that the ad valorem property tax assessed for the property for the tax years 2012 and 2013 was excessive.

At the hearing on petitioner's petition, the parties presented a narrow dispute. Counsel for petitioner described the issues as follows:

> [*Petitioner's counsel*]: Your Honor, *there's not a whole lot actually at dispute, I don't believe, when it comes to what we're here to ascertain.* I believe both parties have the same square footage on the property, have the same acreage on the property, use the same rent rolls, went on the same tour with the manager of the property to value the real estate. I think they both think it's somewhere between class A and class B office space. They both agree that it's – the property

is a mixed use investment property with a mix of office and retail space in the premises. *Substantially what we're here to talk about and to have the Tribunal make a ruling on today is what the appropriate cap rate is that should be applied to the net operating income, and that is primarily what we're going to have to go over today and have your Honor make a ruling on.* So that's just a brief statement of where I think we're going to be going today. Thank you.

Respondent's position was similar:

[*Respondent's counsel*]: Okay. Well, generally speaking, your Honor, the City's position is in agreement with what [petitioner's counsel] just said. This hearing is primarily about what the appropriate capitalization rate is to be applied to this property and the quality of the property. For the most part, there are no underlying facts in dispute actually that I can think of. This really boils down to cap rate and net operating income. Thank you.

The only witnesses presented at the hearing were therefore the parties' respective appraisers. Each party's appraiser offered slightly different testimony regarding the square footage of the building. Petitioner's appraiser testified that the property had 32,513 square feet of retail space and 16,518 square feet of office space, totaling 49,031 total leasable square feet. Respondent's appraiser testified that the property had 49,020 total leasable square feet of which two thirds was retail and the remainder was office. Respondent's appraisal states that the tax records for the property show a gross square footage of 54,388 with 49,020 square feet of leasable space as of December 31, 2011 and 48,936 square feet of leasable space as of December 31, 2012.

Respondent's appraisal report also contained copies of the 2014 property record cards for the subject property. Although tax year 2014 is not at issue, information related to that year's cost approach assessment was included on the record cards. Additionally, neither party disputes that the state equalization value (SEV) of the subject property in tax years 2012 and 2013 was $3,049,700 and $3,096,200 respectively. Therefore, the TCV as reflected on the property record cards for those years was $6,099,400 for tax year 2012 and $6,192,400 for tax year 2013.

As is apparent from the parties' framing of the issues as relating to the appropriate "capitalization rate" and the "net operating income" (NOI) to which that rate would be applied, both parties' appraisers believed the income valuation technique to be the appropriate mechanism for valuing the property. And in applying the income valuation technique, both parties' expert appraisers appraised the property for a lower amount than the 2012 and 2013 assessed values reflected on the property record cards.

Respondent's expert appraiser testified that his appraisal showed a TCV for the subject property of $5,285,000 as of December 31, 2011 and $5,500,000 as of December 31, 2012. In determining his appraisal, he tried as best as he could to utilize an approach that used market numbers. He testified that he examined "[a]ctual income expense statements" but also examined "income expense comparables" and "rent comparables." In determining the capitalization rate, he looked to "RealtyRates.com," which is a company that surveys rates throughout the nation. Respondent's appraisal looked at comparable capitalization rates that were used in properties

throughout the country. Respondent's expert appraiser tried the sales comparison approach, but did not put much credence on his findings in that approach, and testified that the cost approach was not an appropriate technique for valuing the subject property.

In calculating the NOI that the subject property would generate, respondent's appraiser included property taxes as an expense. However, because the lease terms for the property are typically on a "triple net" basis,[1] where tenants reimburse the landlord for property taxes, respondent's appraiser also included the projected amount tenants would reimburse a lessor for property taxes as income. Respondent's appraiser stated that he then did not make an adjustment for property taxes to the capitalization rate.

Following petitioner's examination of respondent's appraiser, whom petitioner had called as an adverse witness, petitioner made multiple requests to stipulate to the NOI contained in respondent's appraisal. At each point, respondent's counsel explicitly stated that it would not enter into such a stipulation.

Petitioner's appraiser, who relied exclusively on the income approach, testified that he relied more on actual numbers from the subject premises in his calculations than on market numbers. Petitioner's appraiser stated that he did this because he put himself in the position of a potential buyer of the property and stated that, in that position, he would be more interested in how the actual subject property was doing than on how other buildings in the area were doing. Petitioner's appraiser testified that he did not give as much credit to published reports because they are based on national numbers that focus on larger metropolitan areas and not localized numbers. Instead of looking at published reports to determine a capitalization rate, he talked to local participants in the market "who deal with properties in and out every day."

Petitioner's appraiser testified that the income approach was the most appropriate approach for valuing the subject property. In regard to handling property tax calculations, petitioner's appraiser agreed with respondent's appraiser that the lease terms in the market were triple net terms where the tenants reimburse the lessor for property taxes. However, contrary to respondent's appraiser's approach, petitioner's appraiser stated that because property taxes would show up both as an expense and as income, in the form of tenant reimbursements, he did not include them at all in his calculations. Petitioner's appraisal determined a TCV for the subject property of $4,515,000 as of December 31, 2011 and $4,560,000 as of December 31, 2012.

The Tribunal issued a written opinion following the hearing. The Tribunal began its opinion by concluding that it would give "little credibility to Petitioner's appraisal as [its] income approach utilizes actual rounded income and expenses to arrive at a value-in-use to its owner." It concluded that this was not the correct approach to measuring the market value of the property. The Tribunal stated that respondent's valuation and appraisal by its appraiser did have a "market-based valuation disclosure that include[d] the source for every input." The Tribunal

---

[1] "Triple net" leases are leases that require tenants to pay all property tax, insurance, and maintenance costs for the leased property.

did rule that respondent's appraisal erred by considering the property taxes in determining NOI. The Tribunal held that it was inappropriate to deduct the property taxes as an expense because petitioner was contesting the value of the property for property tax purposes. The Tribunal found "that the inclusion of the effective tax rate adjusted for the time that the subject [property] is vacant and that the owner pays for the taxes is the more appropriate methodology."

The Tribunal then recalculated the value of the property under respondent's income approach, without deducting the property taxes from the expenses and adjusted the capitalization rate to include the effective tax rate less the vacancy. The Tribunal determined that the TCV for the property in tax years 2012 and 2013 was $6,496,624 and $6,740,942, respectively. However, the Tribunal declined to actually apply the income approach to valuation it had discussed in its opinion (and that the parties had agreed was applicable), stating:

> This Tribunal is reluctant to increase the true cash value of the subject property when the economy is just starting to recover. Therefore, recalculation of respondent's income approach (albeit with a higher result) reflects a value in-line with the original assessment. The property record cards and cost approach calculations were included in Respondent's valuation disclosure and have been reviewed by the Tribunal. The Tribunal is making an independent determination of value, having considered the flaws in Petitioner's appraisal and issues with Respondent's income approach finds [sic] that the subject property is not over assessed and the value as placed on the roll is at 50% of market value.

The Tribunal further concluded, without explanation and contrary to both its discussion of the income approach and its Findings of Fact that each party's appraiser had applied an income approach, that the "cost less depreciation approach, as supported by the income approach, is the correct method to utilize in valuing the subject property for the two tax years in question." The Tribunal therefore ordered the TCV of the property to be set at the numbers that were on the tax rolls for the respective tax years. The Tribunal ordered the property's TCV for tax years 2012 and 2013 be set at $6,099,400 and $6,192,400, respectively, and the SEV and taxable value for those years be set at $3,049,700 and $3,096,200, respectively. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a decision of the Tax Tribunal to determine if it "made an error of law or adopted a wrong legal principle." *Meijer, Inc v City of Midland*, 240 Mich App 1, 5; 610 NW2d 242 (2000). "[F]actual findings are upheld unless they are not supported by competent, material and substantial evidence." *Id*. "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Jones & Laughlin Steel Corp v Warren*, 193 Mich App 348, 352-353; 483 NW2d 416 (1992). "'Substantial' means evidence that a reasoning mind would accept as sufficient to support a conclusion." *Kotmar, Ltd v Liquor Control Comm*, 207 Mich App 687, 689; 525 NW2d 921 (1994). Generally the Tribunal's valuation is supported by competent and material evidence if it is within the range of valuations in evidence. *President Inn Props, LLC v City of Grand Rapids*, 291 Mich App 625, 642; 806 NW2d 342 (2011).

III. ANALYSIS

On appeal, petitioner has argued that the Tribunal's decision was not based on substantial and competent evidence. Additionally, petitioner alleges that the Tribunal's decision violated its constitutional right to due process. We agree that the Tribunal's decision was not based on substantial and competent evidence and therefore do not reach petitioner's constitutional arguments.

"The Tax Tribunal is under a duty to apply its expertise to the facts of a case in order to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Great Lakes Div of Nat'l Steel Corp v Encorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998). TCV is the equivalent of the property's fair market value. *Id*. "It is the Tax Tribunal's duty to determine which approaches are useful in providing the most accurate valuation under the individual circumstances of each case." *Meadowlanes Dividend Housing Ass'n v Holland*, 437 Mich 473, 485; 473 NW2d 636 (1991). If possible, all three methods should be used, but irrespective of the specific method employed, the "final value determination must represent the usual price for which the subject property would sell." *Id*. "The Tax Tribunal is not bound to accept the parties' theories of valuation," and the Tribunal has a "duty to make its own independent determination of true cash value." *Great Lakes*, 227 Mich App at 390. The Tribunal "cannot merely affirm the assessment as placed upon the rolls by the assessing authority." *Oldenburg v Dryden*, 198 Mich App 696, 699; 499 NW2d 416 (1993). "For the Tax Tribunal to accord presumptive validity to a property's assessed valuation on the tax rolls would conflict with the statutory requirement that the proceedings before the Tribunal are 'original and independent and . . . de novo.' " *President Inn Props*, 291 Mich App at 640, quoting MCL 205.735(2). Nevertheless, the assessed valuation on the tax rolls may be adopted "when competent and substantial evidence supports doing so." *Id*.

Here, both parties presented evidence related to the income valuation approach. Additionally, respondent provided the 2014 property record cards and, according to the Tribunal, the calculations used by respondent in assessing the property under the cost-less-depreciation approach. However, the 2012 and 2013 property record cards and underlying valuation calculations were not entered into evidence.

As petitioner points out, the Tribunal published an "Administrative Guidance" on March 16, 2015, addressing in relevant part the issue of property cards used as evidence of value without accompanying documentation:

Property Record Cards

The Tribunal is experiencing an increase in the number of property record cards submitted as evidence of value using the cost-less-depreciation approach that fail to display all of the calculations made in determining value, usually containing the notation "Calculations too long. See Valuation printout for complete pricing." Unfortunately, in most of these instances parties are not submitting the "valuation statement" with the property record card. After discussing this issue with the State Tax Commission and BS&A, it is clear that in these situations complete

calculations of value will be displayed only on the valuation statement. Therefore, it is important that parties submit both the property record card and the valuation statement, where appropriate. In those situations where only a property record card has been submitted and that card does not fully display value calculations, the Tribunal will disregard the property record card, as it does not constitute credible evidence. [See Admistrative Guidance, March 16, 2015, located at https://www.michigan.gov/documents/taxtrib/govdelivery_3-16-15_484128_7.pdf (last accessed January 28, 2016).]

While we are not bound by the Tribunal's guidance, we find it persuasive in light of the Tribunal's duty to base its decision on "evidence that a reasoning mind would accept as sufficient to support a conclusion." *Kotmar, Ltd,* 207 Mich App at 689. We do not believe a valuation provided without accompanying calculations meets that standard. Here, the 2014 property record card provided in respondent's valuation in fact contains the statement "Calculations too long. See Valuation printout for complete pricing." The valuation printout was not entered into evidence. Additionally, the 2012 and 2013 property record cards were not entered into evidence, nor were the associated valuation printouts, if any. And none of the evidence presented by either party, nor the Tribunal's own calculations, resulted in the values ultimately adopted by the Tribunal. The approach employed by the Tribunal further ignored the narrow scope of the issues presented by the parties and the parties' agreement that the income approach was the appropriate methodology to be employed. Notwithstanding the Tribunal's duty to make independent determinations, in this case the Tribunal appears to have done so not by employing sound legal reasoning, but rather to avoid the resulting valuation determinations that would exceed both the range of values proffered by the parties and the current (higher) valuations. Therefore, the Tribunal's factual findings and decision to adopt the 2012 and 2013 assessed values for petitioner's property were not supported by competent, material and substantial evidence. *Meijer, Inc,* 240 Mich App at 5. Although the Tribunal conducted a detailed analysis of the evidence presented at the hearing concerning the income approach to valuation, it essentially discarded that analysis and adopted TCVs for the property that were unsupported by the evidence and indeed outside the range of the valuation evidence provided by either party. See *President Inn Props,* 291 Mich App at 642. The Tribunal instead should have employed an analysis that was supported by competent, material and substantial evidence, subject to appropriate adjustments, if any, required by law or correct legal principles.

We therefore vacate the Tribunal's opinion and order and remand for further proceedings. Accordingly, we need not address petitioner's remaining claims. We do note briefly that the Tribunal's findings concerning the property's leasable square footage was supported by competent, material, and substantial evidence. *Meijer, Inc,* 240 Mich App at 5. Further, while we express no ultimate opinion on the Tribunal's approach to the income valuation method (that it ultimately discarded), we note that the inclusion of an effective tax rate in the capitalization rate is generally not appropriate for triple-net leased property, because the tenants are responsible for real estate taxes.[2] Therefore, it is unnecessary to add the effective tax rate (even adjusted for

_____

[2] The Tribunal has stated as much. See *Jackson Nat Life Ins Co v Lansing,* (MTT Docket No. 336090, entered December 22, 2010) *Chrysler Realty Corp v Royal Oak,* (MTT Docket No.

vacancy) to the capitalization rate if the vacancy rate, tax rate, and tax reimbursements are appropriately accounted for in the NOI. Should the Tribunal on remand nonetheless wish to utilize an effective tax rate added to the capitalization rate, it should explore whether it is appropriate, in applying the income valuation method, to remove the property tax expenses from the NOI without also removing the property tax reimbursement income. It appears to this Court that adjusting the effective tax rate for the vacancy rate already accounts for the amount of property tax the owner of the property would not have to pay; i.e., property tax reimbursements from tenants. Thus, including property tax reimbursements as income in the NOI appears to double-count the property tax reimbursements. Finally, we decline to address petitioner's constitutional arguments as we resolve petitioner's claim on non-constitutional grounds. See *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993).

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

---

2226470, entered April 26, 2002). This Court is unable to find an example where the approach used by the Tribunal in the instant case was applied to triple-net leased property.